2002 WY 64

Margery MASINTER;  Richard H. and Mary M. Vaughan Irrevocable Trust; Alan J. Hirschfield Living Trust and Berte Hirschfield Living Trust;  Robert B. Aikens;  Edwin Augustat and Margaret Augustat;  R. Mark Bodenhamer and Judy Bodenhamer;  Ann Lane, Celanese Corp.;  Anne B. Ehrenkranz;  Richard D. Farman  and  Suzanne  H.  Farman; Thomas W. Fauntleroy, Jr.;  Mark Feldman;  Lawrence G. Finch and Rich Juel; George F. Fry, Jr. and Helen E. Fry Trust, 30 October, 1968;  George Harris and Suzanne Harris;  Bill Jones and Kay Jones;  Monroe Luther and Kay Luther; Robert J. MacLean and Mary Anna MacLean;  Doyen P. McIntosh;  Lester S. Morse, Jr. and Enid W. Morse;  Richard P. Morse;  Michael S. Olin and Marlene Olin;  Gerald O'Rourke and Donna O'Rourke;  Hal Riney;  Stanley B. Seidler;  Keith Stoltz;  Elizabeth K. Treadwell;  Richard and Linda Walter;  and Joel R. Wolpe, Appellants (Proposed Intervenors),

v.

Kenneth W. MARKSTEIN and Carole Markstein, Appellees (Plaintiffs).

Crescent H Homeowners Association, Inc.; Margery Masinter;  Richard H. and Mary M. Vaughan Irrevocable Trust; Alan J. Hirschfield Living Trust and Berte Hirschfield Living Trust;  Robert B. Aikens;  Edwin Augustat and Margaret Augustat;  R. Mark Bodenhamer and Judy Bodenhamer;  Ann Lane, Celanese Corp.;  Anne B. Ehrenkranz;  Richard D. Farman  and  Suzanne  H.  Farman; Thomas W. Fauntleroy, Jr.;  Mark Feldman;  Lawrence G. Finch and Rich Juel; George F. Fry, Jr. and Helen E. Fry Trust, 30 October, 1968;  George Harris and Suzanne Harris;  Bill Jones and Kay Jones;  Monroe Luther and Kay Luther; Robert J. Maclean and Mary Anna Maclean;  Doyen P. Mcintosh;  Lester S. Morse, Jr. and Enid W. Morse;  Richard P. Morse;  Michael S. Olin and Marlene Olin;  Gerald O'Rourke and Donna O'Rourke;  Hal Riney;  Stanley B. Seidler;  Keith Stoltz;  Elizabeth K. Treadwell;  Richard and Linda Walter;  and Joel R. Wolpe, Appellants (Proposed Intervenors),

v.

Christian A. Guier, M.D.;  Alan S. Hirshberg;  Robert Spetzler, M.D. and Nancy Spetzler, Trustees of the Spetzler Family Trust;  Jon M. Malinski and Arlene M. Malinski;  and Kenneth W. Markstein and Carole Markstein, Appellees (Plaintiffs).

Nos.  01–129, 01–135.

Supreme Court of Wyoming.

April 26, 2002.

Representing Appellants: Timothy W. Miller of Reeves & Miller, Casper, WYO.

Representing Appellees in Case No. 01–129: R. Michael Mullikin and Carolyn L. Null Anderson of Mullikin, Larson & Swift, Jackson, WYO.

Representing Appellees in Case No. 01–135: R. Scott Garland and Joseph F. Moore, Jr. of Moore, Myers & Garland, LLC, Jackson, WYO.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   The district court denied owners in the Crescent H Subdivision the right to intervene in cases in which owners in neighboring McNeely Mountain and Fish Creek Meadows Subdivisions sued the successor in interest of the developer of both subdivisions to enforce fishing and recreational rights they claim the developer granted to them when they purchased their lots.   Those rights involved riparian lands included within the Crescent H Subdivision.   The district court denied the Crescent H owners' motions to intervene both as of right and permissively, and we affirm.

## ISSUES

[¶ 2]   The appellants present these issues for our review:

> 1. Whether the Crescent H homeowners were entitled to intervene as of right.

2. Whether the Crescent H homeowners should have been permitted to intervene.

The appellees in Case No. 01–129 phrase the issues as:

1. Whether the district court properly denied appellants' motion to intervene as of right?

2. Whether the district court properly denied the appellants' motion for permissive intervention?

3. Whether the appellants have presented a sufficient record on appeal?

The appellees in Case No. 01–135 set out the issue as:

Have Appellants[ ] met their burden of proof that the District Court abused its discretion by denying the Appellants' Motion to Intervene?

## FACTS

[¶ 3] This dispute has a massively complicated history, most of which is irrelevant to the resolution of the issues presented on appeal. However, some background is necessary. Donald H. Albrecht and his limited partnership, Rivermeadows Associates, Ltd. (RMA), originally developed both of the subdivisions involved. The Crescent H Ranch, owned by RMA, included approximately 1,300 acres of land located near Wilson and contained a guest ranch with outstanding fishing habitat in the riparian lands near Fish Creek and the Snake River. RMA platted the Crescent H Subdivision in 1985. With the sale of individual lots within the Crescent H Subdivision, RMA granted the buyers certain fishing and recreational rights in the riparian lands on the ranch which remained in RMA's ownership. RMA also developed the McNeely Mountain Subdivision and granted similar fishing and recreational rights to purchasers of those lots. RMA ultimately assigned other adjacent property to Fish Creek Meadows, Inc. together with similar fishing and recreational rights. Fish Creek in turn granted those rights to the individuals who purchased lots in the Fish Creek Meadows Subdivision. Thus, RMA was the source of the rights claimed by the Crescent H, the McNeely Mountain, and the Fish Creek Meadows owners. While RMA owned and controlled the Crescent H Subdivision, the appellees, who were purchasers in the McNeely Mountain and the Fish Creek Meadows Subdivisions, utilized their fishing and recreational rights in the RMA riparian lands without challenge and paid the requisite fees for such use.

[¶ 4] On January 17, 1995, RMA filed a petition for bankruptcy. At that time, some of the owners in all three subdivisions had not recorded or maintained documentation of the grants of their respective fishing and recreational rights. The bankruptcy called into question the validity and efficacy of the fishing and recreational rights, especially those that were unrecorded or allegedly conveyed after the petition for bankruptcy was filed. Forty-six individual Crescent H owners filed an adversary action in the bankruptcy seeking a declaration of the validity of their rights. The bankruptcy trustee also filed adversary actions against the McNeely Mountain and the Fish Creek Meadows owners seeking to avoid the fishing and recreational rights that RMA had conveyed to them. The trustee ultimately sold RMA's remaining ranch property, including the riparian lands, to Countryside I, L.L.C. However, that sale was not "free and clear of the interests of those fishing license and use agreement holders" which included the appellees in these cases. Ultimately, the Crescent H owners entered into a settlement agreement with the trustee that involved the issuance of new fishing and recreational rights by Countryside to these owners which were intended to supersede the earlier rights. The McNeely Mountain and the Fish Creek Meadows owners objected to that settlement arguing disparate treatment of similarly situated potential creditors. In the hearing on the settlement agreement, the counsel for the Crescent H owners made it clear that their claims were separate and distinct from the McNeely Mountain and the Fish Creek Meadows owners' claims and they were "not parties to the other two adversary proceedings, have taken no position, don't want to be involved." Ultimately, the bankruptcy court approved the Crescent H owners' settlement, and the adversary matter was dismissed. In addition, the bankruptcy

court refused to consolidate all the adversary actions of the various homeowners concluding, "despite the existence of some common factual issues . . ., there remain different issues of law."[1] Ultimately, the bankruptcy court also dismissed the adversary proceedings filed against the McNeely Mountain and the Fish Creek Meadows owners because the real property had been conveyed to Countryside and no justiciable controversy remained with regard to the trustee.

[¶ 5] After the bankruptcy concluded, Countryside sent written notices to the McNeely Mountain and the Fish Creek Meadows owners denying the validity of their fishing and recreational rights in the Crescent H Ranch and its riparian lands. That action prompted them to file the underlying complaint in Case No. 01–135 on December 23, 1998,[2] seeking to enforce their alleged fishing and recreational rights. Countryside filed a motion to dismiss which, after a hearing on June 18, 1999, remained pending for over a year and a half without action from the district court. The Crescent H owners did not file their motion to intervene in Case No. 01–135 until February 6, 2001, two years and forty-five days after the complaint was filed.[3] The case was reassigned to another judge who held a hearing on the motion to intervene and denied the same. That hearing was not transcribed, and the order provides no explanation of the basis for the district court's decision.

## DISCUSSION

[¶ 6] The district court denied intervention both as a mater of right and permissively. W.R.C.P. 24(a)(2) permits a party to intervene as of right in an action and provides in pertinent part:

> (a) *Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:

. . .

> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Intervention may be allowed permissively when the intervenor's claim or defense has a question of fact or law in common with the main action and the court in its discretion determines intervention will not unduly delay or prejudice the adjudications of the rights of the original parties. W.R.C.P. 24(b)(2).

[¶ 7] In *State Farm Mutual Automobile Insurance Company v. Colley*, 871 P.2d 191, 194 (Wyo.1994) (citations omitted), we stated the standard of review in matters involving claims of intervention as a matter of right:

> Four conditions must be satisfied to permit intervention as of right under W.R.C.P. 24(a)(2). First, the applicant must claim an interest related to the property or transaction which is the subject of the action. Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately represented by the existing parties. Fourth, the application for intervention must be timely. An applicant who fails to meet any one of these conditions is not permitted to intervene as of right under W.R.C.P. 24(a)(2). . . .

Questions of law and judicial discretion are presented by the denial of a motion to intervene. This court accords no deference to a district court's decisions on issues of law. Therefore, if the district court erroneously denied intervention as of

1. We take judicial notice of the Order Denying Motion for Consolidation, United States Bankruptcy Court for the District of Wyoming, Case No. 95–20322, Ch. 11, Adversary No. 97–2003 (Jan. 6, 1998), found in the bankruptcy records. *See Dellapenta v. Dellapenta*, 838 P.2d 1153, 1159 (Wyo.1992).

2. The Fish Creek Meadows owners filed a complaint in Case No. 01–129 on June 18, 1999, seeking to enforce the same rights.

3. In Case No. 01–129, the Crescent H owners filed their motion to intervene on February 8, 2001, almost one year and eight months after the complaint was filed.

right under the first, second or third conditions of W.R.C.P. 24(a)(2), we will reverse. However, the determination of the timeliness of an application to intervene is a matter within the discretion of the district court. The district court is permitted to weigh the timeliness of an application to intervene in light of the circumstances of the particular case, including whether the applicant may have sought intervention earlier. Therefore, to prevail on an appeal from a finding that an application to intervene is untimely, an abuse of discretion must be demonstrated.

■ [¶ 8] This court must affirm the district court's action on appeal if the judgment is sustainable on any legal ground appearing in the record. *Deisch v. Jay*, 790 P.2d 1273, 1278 (Wyo.1990). Although the orders denying the motions to intervene in these cases do not set out the grounds the district court specifically relied upon, we conclude sufficient bases exist in the records to warrant denial of the motions to intervene.

■ [¶ 9] First, the intervenors must claim "an interest relating to the property or transaction which is the subject of the action." W.R.C.P. 24(a)(2). The property which is the subject of the action in this case is the riparian lands of the Crescent H Subdivision, and the "transaction" involved is the alleged grant by RMA to the McNeely Mountain and the Fish Creek Meadows owners of nonexclusive fishing and recreational rights in those lands. The Crescent H owners have an interest in the riparian lands as they too have nonexclusive easements in those lands which can be affected, albeit only slightly,[4] by the confirmation of additional nonexclusive easements in the same property. To meet this requirement, we have determined the movant must have a "significantly protectable interest" in the subject of the litigation and not a contingent interest or one similar to any member of the public. *Colley*, 871 P.2d at 194. Clearly, the Crescent H owners' interest is not similar to that of any member of the public. Likewise, their interest is not contingent.

■ [¶ 10] The second and third requirements are intertwined. The applicant must be situated so that disposition of the action "may as a practical matter impair or impede the applicant's ability to protect that interest" unless "the applicant's interest is adequately represented by existing parties." W.R.C.P. 24(a)(2). To apply this requirement, we must examine the actual claims made by the McNeely Mountain and the Fish Creek Meadows owners to determine whether disposition of those claims will impede the Crescent H owners from protecting their own interests in their licenses and whether their interests are adequately represented by Countryside. The claims include quiet title relating to the McNeely Mountain and the Fish Creek Meadows owners' right of access to the riparian lands owned by Countryside, declaratory judgment related to those rights in Countryside's property under the licenses, breach of contract by Countryside in denying them access, and tortious interference with contract by Countryside in inducing the bankruptcy trustee to breach the contracts. We can discern no reason why Countryside's interests are not completely aligned with the Crescent H owners' interests with regard to the defense of these claims. Countryside's unilateral and unexplained denial of the McNeely Mountain and the Fish Creek Meadows owners' rights provides clear indication that Countryside firmly intends to disallow these owners access to its riparian lands which is the same result sought by the Crescent H owners.

[¶ 11] All the claims made by the McNeely Mountain and the Fish Creek Meadows owners rely upon their contractual relationship with RMA and its successor in interest, Countryside. The Crescent H owners fail to identify any particular claims they would intend to make if allowed to intervene other than supporting Countryside's efforts to argue against the validity of the claimed rights.[5] It may well be that the Crescent H

---

4. Five additional licenses would not likely have a great effect upon the use of the lands where forty-two licenses have already been granted. However, there was evidence that the value a license added to an individual lot in these subdivisions was at least $125,000.

5. In fact, the Crescent H owners planned to call no witnesses or experts, conduct no discovery,

owners have claims of their own against RMA and Countryside related to the alleged grant of licenses to owners of lands outside of the Crescent H Subdivision; however, those claims can be pursued independently as counsel admitted during argument. Consequently, those claims are not impaired or impeded by the disposition of the McNeely Mountain and the Fish Creek Meadows owners' separate claims based upon their alleged contracts with RMA. No showing was made concerning why the Crescent H owners' interests are not adequately represented by Countryside in this matter.

[¶ 12] Finally, a motion to intervene can be denied solely on the basis of timeliness. *Platte County School District No. 1 v. Basin Electric Power Cooperative*, 638 P.2d 1276, 1278 (Wyo.1982). The determination of the timeliness of an application to intervene is a matter within the district court's discretion. *Curless v. Curless*, 708 P.2d 426, 432 (Wyo.1985). The Crescent H owners filed their motion in Case No. 01–135 over two years [6] after the action was initiated. While this length of delay alone may not be fatal to a motion to intervene, we consider timeliness "in light of the circumstances of the particular case." *Colley*, 871 P.2d at 194. The issue of the validity of fishing and recreational licenses in these properties has been well known to all the parties at least since the Crescent H owners filed their adversary action in the RMA bankruptcy on October 17, 1996, over four years before they filed their motion to intervene in Case No. 01–135. In the hearing approving the settlement of the Crescent H owners' adversary action, which was opposed by the McNeely Mountain and the Fish Creek Meadows owners because it did not include them, the counsel for the Crescent H owners clearly indicated awareness of the non-Crescent H owners' claims stating in reference to the adversary actions involving those other owners, "The [Crescent H owners] are not parties to the other two adver-

sary proceedings, have taken no position, don't want to be involved." At that time, the Crescent H owners opted to go it alone, obtain their own settlement, and let the McNeely Mountain and the Fish Creek Meadows owners pursue whatever course they deemed appropriate to protect their interests. We cannot ignore that background in determining whether the motion to intervene was timely.

[¶ 13] The Crescent H owners argue this case was moving very slowly at the time of their motion and granting it would not unduly delay the matter or prejudice the other parties. While that may be true, the district court had denied an injunction, had a motion to dismiss under consideration, and had entered and revised various scheduling orders. It can hardly be deemed unreasonable for the court to conclude adding thirty parties in Case No. 01–135 would unduly delay an ultimate resolution of the matter, which had been pending for over two years prior to the filing of the motion.[7] We conclude the record supports the district court's denial of the motions to intervene as a matter of right as a result of the applicants' failure to meet three of the four requirements of W.R.C.P. 24(a)(2).

[¶ 14] Motions to intervene permissively are subject to the district court's discretion. W.R.C.P. 24(b)(2). We will review a district court's ruling on permissive intervention for an abuse of discretion, and our review in this area is particularly deferential. *See United States v. City of New York*, 198 F.3d 360, 367 (2d Cir.1999). We likewise hold the district court did not abuse its discretion in denying the motions to intervene based upon permissive intervention.

[¶ 15] Affirmed.

---

introduce no evidence, but simply file summary judgment motions in support of Countryside.

6. In Case No. 01–129, they filed their motion almost one year and eight months after the action was initiated.

7. In Case No. 01–129, there were twenty-nine parties who were asking to be added in a case which had been pending for almost a year and eight months prior to the filing of the motion to intervene.