2017 WY 134

IN the INTEREST OF: EHD,
Minor Child,

MMH and LJH, Appellants (Petitioners),

v.

The State of Wyoming, Appellee
(Plaintiff).

S-17-0110

Supreme Court of Wyoming.

November 16, 2017

Representing Appellants: Douglas W. Bailey, Bailey Stock Harmon Cottam P.C., Cheyenne, Wyoming.

Representing Appellee: Peter K. Michael, Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Christina F. McCabe, Senior Assistant Attorney General. Argument by Ms. McCabe.

Guardian Ad Litem: Dan S. Wilde, Deputy State Public Defender and Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian Ad Litem Program. Argument by Mr. Hockman.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

BURKE, Chief Justice.

[¶1] Appellants, MMH and LJH, appeal from the juvenile court's order denying their motion to intervene in custody proceedings relating to their granddaughter, EHD. Appellants claim the court abused its discretion in denying their motion. They further contend the court erred in denying their requests to be appointed to the multi-disciplinary team and to have EHD placed with them. We affirm.

## ISSUES

[¶2] Appellants present the following issues:

1. Did the juvenile court abuse its discretion in denying Appellants' request to intervene?

2. Did the juvenile court abuse its discretion in denying Appellants' request to be appointed to the multi-disciplinary team?

3. Did the juvenile court abuse its discretion in denying Appellants' request that EHD be placed with them?

The State and EHD's guardian ad litem raise the following additional issues:

1. Whether this Court should decline to review Appellants' claim that they were entitled to intervention as a matter of right because they did not raise the issue in the juvenile court.

2. Whether Appellants lack standing to challenge the juvenile court's denial of Appellants' request to be appointed to the multi-disciplinary ·team and the court's denial of Appellants' request that EHD be placed with them.

## FACTS

[¶3] On June 18, 2015, EHD's mother, HD ("Mother"), was discovered unconscious in the backseat of her vehicle by law enforcement with a needle protruding from her body. She held EHD in her arms and an empty bottle of rum was within reach. Mother was arrested for driving under the influ-

ence and possession of a controlled substance, and EHD was placed in protective custody after efforts to place her with family members failed.

[¶4] The State filed a petition alleging that Mother had neglected EHD. After a hearing on the State's petition, the juvenile court found that EHD had been neglected. The court ordered that she would remain in the State's custody and that the Department, in consultation with EHD's guardian ad litem, should determine the physical placement of EHD. The court also appointed a multi-disciplinary team ("MDT") to provide recommendations for her care. The team consisted of EHD's foster parents, the guardian ad litem, the Department caseworker, Mother, Mother's attorney, and the district attorney.

[¶5] The Department placed EHD in foster care. While she was in foster care, Appellants had unsupervised visitation with her in their home. In December 2015, the Department learned that Mother was living in the home and that Appellants were permitting her access to the child without the Department's supervision. From that point on, the Department began supervising visitation with Appellants because of its concern that Appellants would allow Mother unapproved contact with EHD.

[¶6] While visitation was ongoing, Appellants submitted an application for foster care certification. The Department provided an update of that application at an MDT meeting held on November 17, 2015. The Department reported that "[Appellants] are working on completing the foster care certification process to have [EHD] placed with them. [Appellants] initially did not want [EHD] placed with them and have since changed their minds and now express a desire to adopt her." Mother did not attend the MDT meeting. Following the MDT's six-month review meeting, in December 2015, the Department noted that Appellants continued to express a desire to adopt EHD, but the Department remained concerned that Appellants would allow Mother access to EHD without the Department's knowledge.

[¶7] At the MDT's nine-month review meeting, the Department noted "several concerns about placement with [Appellants]." It noted that Appellants had declined the Department's offer to extend their visits with EHD. It also noted that Appellants had ended visits with EHD early and had cancelled some visits.

[¶8] The Department submitted a 12-month permanency hearing report on August 30, 2016. The report identified ongoing issues. The report noted that Appellants allowed Mother to have unapproved contact with EHD. It also indicated that the foster care coordinator closed Appellants' foster care certification application after they failed to complete certain required tasks, including CPR/First Aid certification, physicals, TB tests, and a home study. Ultimately, the Department "ruled [Appellants] out as a placement option" for EHD after concluding that they had "proven they will not comply with DFS and will allow [Mother] access to [EHD]."

[¶9] The juvenile court held a permanency hearing on December 8, 2016. Following the hearing, the court changed the permanency plan from reunification to termination of parental rights and adoption. On February 1, 2017, over nineteen months after the case began, Appellants filed a motion to intervene in the proceedings. Appellants' motion also requested that they be appointed to the multi-disciplinary team. The motion noted that Appellants had also filed a petition for adoption of EHD. In response, the State contended that Appellants' attempt to intervene was untimely. The State also asserted that Appellants had been considered for placement, but that the Department and the GAL had decided against placement with Appellants based on concerns for the wellbeing of the child. The juvenile court took the matter under advisement and subsequently issued an order denying Appellants' motion to intervene. This appeal followed.

## DISCUSSION

### I. Intervention as a Matter of Right

[¶10] Appellants contend the juvenile court abused its discretion in denying their motion to intervene. According to Appellants, they had a right to intervene in the proceed-

ings pursuant to W.R.C.P. 24(a). That rule provides as follows:

> (a) *Intervention of Right.*—On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24 also provides for permissive intervention:

> (b) *Permissive Intervention.*—
>
> > (1) *In General.*—On timely motion, the court may permit anyone to intervene who:
> >
> > > (A) is given a conditional right to intervene by statute; or
> > >
> > > (B) has a claim or defense that shares with the main action a common question of law or fact.

In this appeal, Appellants rely solely on W.R.C.P. 24(a) and do not present any claim with respect to permissive intervention under W.R.C.P. 24(b). The guardian ad litem contends that Appellants should be precluded from asserting they were entitled to intervention as a matter of right because they did not present this issue to the juvenile court. We agree.

[¶11] Appellants made no reference to Rule 24 in their motion to intervene or at the hearing on that motion, and they gave no indication as to whether they sought permissive intervention or intervention as a matter of right under that rule. In their motion, Appellants asserted:

> 4. Petitioners are the child's maternal grandparents and are seeking adoption. Thus, they should be allowed to intervene in this Juvenile proceeding.
>
> 5. The child has a fundamental right to a meaningful relationship with her grandparents. *In re JW*, 226 P.3d 873 (Wyo. 2010). Thus, Petitioners should be allowed to intervene in this Juvenile proceeding.
>
> 6. Petitioners adopted a sibling of the child, and the child's fundamental right to a relationship with her sibling should also be respected and protected. *See id.* Thus, Petitioners should be allowed to intervene in this Juvenile proceeding.

At the hearing, counsel for Appellants stated as follows:

> [COUNSEL]: As to the scope of intervention, I don't know that they want to be parties with access to all of the confidential information. What the motion requests is that they be added to the MDT team, and there is a provision in the Wyoming statutes that allows a party to move for someone to be added or taken off the MDT team. So we filed this motion to intervene to get this issue before the Court.
>
> [Appellants] want to be on the MDT team. They want to be considered as a placement option. At minimum, they want to have some say in this child's life. Again, they're the grandparents.
>
> THE COURT: [T]he issue then really is, from your point of view, permanency has been decided, and that's the thing the Supreme Court is most concerned about, but in the interim, that is between now and termination and or adoption, your clients want to be considered placement options.
>
> [COUNSEL]: Absolutely. Absolutely. . . .

Notably, Appellants did not cite to any statute purporting to grant them a right to intervene pursuant to W.R.C.P. 24(a)(1).

[¶12] With respect to intervention as a matter of right under W.R.C.P. 24(a)(2), we have explained that four conditions must be satisfied to permit intervention under that section:

> First, the applicant must claim an interest related to the property or transaction which is the subject of the action. Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately represented

by the existing parties. Fourth, the application for intervention must be timely.

*State Farm Mut. Auto. Ins. Co. v. Colley,* 871 P.2d 191, 194 (Wyo. 1994). In the proceedings below, Appellants failed to acknowledge the factors used in determining intervention as a matter of right under W.R.C.P. 24(a), and provided no argument or authority relating to their continuing ability to protect their interest in familial association with EHD, whether that interest was adequately represented by Mother, or the timeliness of their motion to intervene. Accordingly, Appellants did not provide the juvenile court with an opportunity to evaluate a claim for intervention as a matter of right under W.R.C.P. 24. In general, we do not consider claims raised for the first time on appeal. *Anderson v. Board of Cty. Comm'rs of Teton Cty.,* 2009 WY 122, ¶ 15, 217 P.3d 401, 405 (Wyo. 2009) (citing *Davis v. City of Cheyenne,* 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004)). "We 'take[ ] a dim view of a litigant trying a case on one theory and appealing it on another. ... Parties are bound by the theories which they advanced below.' " *Anderson,* ¶ 15, 217 P.3d at 405 (quoting *WW Enterprises, Inc. v. City of Cheyenne,* 956 P.2d 353, 356 (Wyo. 1998)). Because Appellants failed to assert a claim of intervention as a matter of right in the proceedings below, we need not consider this issue. Accordingly, we affirm the juvenile court's denial of Appellants' motion to intervene.

[¶13] While not necessary to our resolution of this appeal, we find it worthwhile to provide additional comment on Appellants' claim that they had a right to intervene in this action. Appellants contend, first, that they have a right to intervene by statute under W.R.C.P. 24(a)(1). However, they do not cite to any statute.[1] Rather, they cite to our decision in *In re JW,* 2010 WY 28, 226 P.3d 873 (Wyo. 2010). In that case, we recognized a preference for placement with nuclear or extended family members. *Id.,* ¶ 27, 226 P.3d

at 881. According to Appellants, the preference for family placement "imbues in relatives the statutory right to intervene in a juvenile proceeding." Our decision in *In re JW,* however, did not address the issue of intervention and, in any case, does not establish or recognize a statutory right to intervene that would be applicable to this case.

[¶14] Appellants also contend that their motion to intervene should have been granted under W.R.C.P. 24(a)(2). We have set forth the following standard of review with respect to questions involving intervention as of right under W.R.C.P. 24(a)(2):

> The first three conditions of intervention of right are questions of law. *Halliburton [Energy Services, Inc. v. Gunter,* 2007 WY 151], ¶ 5, 167 P.3d [645,] 648 [ (Wyo. 2007) ] (quoting *Masinter [v. Markstein,* 2002 WY 64], ¶ 7, 45 P.3d [237,] 240–41 [ (Wyo. 2002) ] ). "This [C]ourt accords no deference to a district court's decisions on issues of law." *Masinter,* ¶ 7, 45 P.3d at 240. Because the first three conditions of intervention of right are questions of law, this Court will reverse the district court's denial of intervention of right if it erroneously denied intervention of right based on the first, second, or third conditions. *Id.* at 240–41. The fourth condition, however, is a "matter within the discretion of the district court." *Id.* at 241.

*Hirshberg v. Coon,* 2012 WY 5, ¶ 9, 268 P.3d 258, 260 (Wyo. 2012). "[A] motion to intervene can be denied solely on the basis of timeliness." *Masinter v. Markstein,* 2002 WY 64, ¶ 12, 45 P.3d 237, 242 (Wyo. 2002).

[¶15] Timeliness of an application to intervene as a matter of right under W.R.C.P. 24(a)(2) is determined by an evaluation of the totality of the circumstances. *Curless v. Curless,* 708 P.2d 426, 432 (Wyo. 1985). In *State Farm v. Colley,* 871 P.2d at 197, we noted that the federal courts use four factors to evaluate the timeliness of an application to intervene as of right:

---

1. Examples of statutes granting a right to intervene include Wyo. Stat. Ann. § 35-11-1423 (LexisNexis 2017) (granting a right to intervene to persons affected by a storage tank release); Wyo. Stat. Ann. § 35-11-904 (granting the Department of Environmental Quality a right to intervene in

any action to enforce the provisions of the Wyoming Environmental Quality Act); and Wyo. Stat. Ann. § 40-26-137 (granting persons aggrieved by a discriminatory housing practice a right to intervene in actions filed by the attorney general).

First, the length of time the applicant for intervention knew or reasonably should have known of its interest in the case before the application for leave to intervene was filed. Second, the extent of the prejudice that the existing parties to the litigation may suffer as a result of the applicant's failure to seek intervention as soon as the applicant actually knew or reasonably should have known of its interest in the case. Third, the extent of the prejudice that the applicant for intervention may suffer if the application is denied. Fourth, the existence of unusual circumstances militating either for or against a determination that the application is timely.

(Internal citations omitted).

[¶16] This is not a case where Appellants were unaware of the situation. The record indicates that Appellants were aware of this case from the time the neglect proceedings were initiated on June 19, 2015. Appellants are the adoptive parents of EHD's brother and, as a result, were aware of concerns about Mother's ability to care for EHD and were familiar with child custody proceedings. Although the record is scant, it indicates that Appellants were aware the child was in foster care. They had visitation with the child during that time. That visitation was originally unsupervised, but was changed to supervised visitation when the Department learned that Appellants were permitting Mother to have access to the children without its consent. They were scheduled for a bonding assessment but failed to attend. They had advised the Department, months before the permanency hearing, that they wanted EHD placed with them. They were considered for placement as foster parents, but failed to satisfy the necessary requirements. While all of this was ongoing, Appellants took no action to intervene. They did not file their motion to intervene until after the December 2016 permanency hearing, over 19 months after the case was initiated.[2] In light of these facts, the juvenile court did not abuse its discretion in denying Appellants' motion to intervene.

## II. Standing

[¶17] In Appellants' remaining issues, they claim the court abused its discretion in denying their request to be appointed to the MDT and their request that EHD be placed with them. The State contends, however, that Appellants do not have standing to raise these issues because they are not a party to this action. We agree with the State.

[¶18] We have stated that "The general rule is that 'only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.'" *Hirshberg*, ¶ 20, 268 P.3d at 263 (quoting *Southern Utah Wilderness Alliance v. Kempthorne*, 525 F.3d 966, 968 (10th Cir. 2008)). As discussed above, the juvenile court denied Appellants' motion to intervene. As a result, they did not become parties in this case. While we have recognized the right to appeal from the denial of a motion to intervene, Appellants have presented no authority supporting their ability to challenge any other rulings. *James S. Jackson Co. v. Horseshoe Creek Ltd.*, 650 P.2d 281, 285 (Wyo. 1982). Other courts which have considered this issue have determined that failed intervenors do not have standing to appeal an adverse judgment. *See, e.g., Hopper v. Estate of Goard*, 386 P.3d 1245, 1247 n.2 (Alaska 2017) ("Although we review the denial of [the appellants'] motion to intervene, we do not reach their other arguments because '[a] failed intervenor has standing to appeal only the denial of intervention' and not the merits of the adjudication."); *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998) ("Because the motion to intervene was denied, the movant never became a party and thus has no standing to appeal any order other than the denial of intervention."); *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 210 (1st Cir. 1998) ("Because we affirm the denial of [appellants'] motions to intervene, they lack standing to press any other issues before this court."). Considering that Appellants did not become a party to this case, we conclude they

---

**2.** At the hearing on the motion to intervene, counsel for Mother stated that she had no objection to Appellants' intervention. Considering that fact, it is unclear why Mother did not move for

Appellants to be added to the MDT pursuant to Wyo. Stat. Ann. § 14-3-427(b). Under Wyo. Stat. Ann. § 14-3-427(d)(iv), the court has discretion to appoint a relative to the MDT.

do not have standing to pursue their remaining issues.

[¶19] Affirmed.