# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 92

**APRIL TERM, A.D. 2020**

**July 15, 2020**

KATHLEEN KERBS, individually and as partner of the Four Bar Ranch Partnership,

Appellant
(Intervenor-Applicant),

v.

KIP D. KERBS, individually and as partner of the Four Bar Ranch Partnership; CARL D. KERBS, individually and as partner of the Four Bar Ranch Partnership; and NADENE KERBS, individually and as partner of the Four Bar Ranch Partnership,

Appellees
(Defendants),

and

SCOTT A. KERBS, individually and as partner of the Four Bar Ranch Partnership,

Appellee
(Plaintiff).

S-19-0266

*Appeal from the District Court of Carbon County*
The Honorable Steven K. Sharpe, Judge

***Representing Appellant:***
C.M. Aron, Aron Law, Laramie, Wyoming.

*Representing Appellees Carl and Nadene Kerbs:*
> William L. Hiser, Brown & Hiser LLC, Laramie, Wyoming.

*Representing Appellee Kip D. Kerbs:*
> Patrick J. Crank, Abbigail C. Forwood and Martha I. Tate, Crank Legal Group, P.C., Cheyenne, Wyoming.

*Representing Appellee Scott Kerbs:*
> Antonio E. Bendezu, Pelton Creek Law LLC, Fort Collins, Colorado.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Kathleen Kerbs filed a motion to intervene in an action brought by her husband, Scott Kerbs, against Kip, Carl, and Nadene Kerbs for dissolution of the Kerbs Four Bar Ranch Partnership.[1] The district court denied Kathleen's motion as untimely. We conclude the district court did not abuse its discretion by denying the motion to intervene and affirm.

## ISSUE

[¶2]    Did the district court abuse its discretion by denying Kathleen's motion to intervene as untimely?

## FACTS

[¶3]    Carl and Nadene owned a ranch near Saratoga, Wyoming. In 1989, they formed the Kerbs Four Bar Ranch Partnership with Scott and Kip. Carl and Nadene contributed the ranch property to the partnership. Scott and Kathleen lived in a house on the ranch. Carl and Nadene gifted Scott and Kip each a 24% interest in the partnership.[2] They also gifted Kathleen and Kip's wife, Rebecca, each a 9% interest in the partnership. Over time, the relationship between Scott and Kip soured.

[¶4]    In 2015, Scott filed an action against the partnership, Kip, Carl, and Nadene; he did not name Kathleen or Rebecca as defendants. In his complaint, Scott sought an accounting of the partnership interests, partition of partnership property, and dissolution of the partnership pursuant to the partnership agreement and Wyoming statutes. Paragraph 10 of the partnership agreement described the dissolution procedure:

> Dissolution of Partnership. The partnership shall terminate and be dissolved upon the withdrawal, retirement, removal, dissolution, insolvency, legal incapacity, insanity, death, bankruptcy, or incompetency of any partner. At the time of dissolution of the partnership, the partners or their representatives may agree on such equitable division of the partnership assets, or purchase of the partnership assets as all partners or their representatives shall agree. In the absence of such an agreement, the partnership assets shall be appraised by three appraisers, selected by each of the partners[,] and the continuing partner or partners, if any, shall have the right to purchase the entirety of the assets of the partnership at a value

---

[1] Because the parties share the same surname, we will refer to them by their first names.
[2] The partnership agreement states Carl and Nadene gifted 24.5% interests to Scott and Kip, but the tax documents indicate the gifts were 24% interests. The record also indicates another partnership merged with the Kerbs Four Bar Ranch Partnership in 1993. These facts do not affect our analysis.

1

determined by the appraisers. In the event there are no continuing partners, or the continuing partners choose not to purchase the assets, the assets shall be sold to the highest bidder.

[¶5]   Over the next few years, the parties attempted to reach an agreement on how to divide the partnership assets. Scott's attorney sent an e-mail to the other attorneys in the case stating that Kathleen was "willing to participate" in settlement discussions and "join in any settlement, and [would] be represented" by him.

[¶6]   On June 27, 2018, the parties attended a pretrial conference. During the conference, they agreed on a procedure to dissolve the partnership. Their agreement was memorialized in an Order to Dissolve Partnership and Establishing Distribution Procedure entered by the district court on July 26, 2018. Under the terms of the dissolution order, Scott's accounting and partition claims were dismissed. The order also stated Scott and Kip each owned a 33% interest in the partnership and Nadene and Carl owned the remaining 34%. The 33% interest allocated to Scott included his 24% interest and Kathleen's 9% interest. The 33% interest allocated to Kip included Rebecca's interest.[3]

[¶7]   The dissolution order stated the partners could not agree on an equitable division of the partnership's assets; therefore, the appraisal and buyout process in Paragraph 10 of the partnership agreement would govern the dissolution. The order designated Scott as the withdrawing partner. Each partner was tasked with appointing one appraiser to value the partnership property, and the order outlined the timeline for the appraisal. The order stated Carl, Nadene, and Kip would have the opportunity to purchase Scott's interest in the partnership by paying him 33% of the appraised value of the partnership property. In exchange for payment, Scott agreed to execute deeds, assignments, and other transfer documents to convey his interest in the partnership to the purchasing partner or partners.

[¶8]   The appraisal valued the partnership assets at $4,635,000. Kip elected to purchase Scott's interest and closing was set for June 10, 2019. Scott objected to Kip's election to purchase his interest and filed a motion to stay and enjoin the closing. He claimed he should not have been deemed the withdrawing partner and should have the opportunity to elect to buyout the others. Scott asserted the principal remedy he sought when he filed his complaint was partition of the ranch.

[¶9]   Kip filed a motion to enforce the Order to Dissolve Partnership and Establishing Distribution Procedure and requested relief under Wyoming Rule of Civil Procedure 70.[4]

---

[3] Rebecca apparently passed away prior to the pretrial conference.
[4] Rule 70 states in relevant part:

> (a) *Party's Failure to Act; Ordering Another to Act.* – If a judgment requires a party to convey land, to deliver a deed or other document, or to

On July 1, 2019, the district court granted Kip's Rule 70 motion, concluding the dissolution order was binding on all parties and Scott's interest in the partnership property would immediately vest in Kip on the date Kip transferred payment to the clerk of the district court. Kip tendered payment for Scott's interest.

[¶10] Kathleen then filed a motion to intervene. She claimed a right to intervene because she owned a 9% interest in the partnership. She attached to her motion IRS K-1 forms showing her partnership interest. Kathleen swore in an affidavit she was not represented by Scott's attorney in the settlement negotiations and she had just recently become aware of the court's order divesting her of her interest in the partnership. She also filed a motion under Wyoming Rule of Civil Procedure 60 to set aside the dissolution order and all subsequent orders.

[¶11] The district court held a hearing on Kathleen's motions. The court apparently took evidence at the hearing; however, the transcript was not designated as part of the record on appeal. At the conclusion of the hearing, the district court denied Kathleen's motion to intervene as untimely. Because it denied her motion to intervene, it also denied her motion to set aside the orders. This appeal followed.

## DISCUSSION

[¶12] Intervention is governed by Wyoming Rule of Civil Procedure 24.

> (a) *Intervention of Right*. – On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court. When done, the act has the same effect as if done by the party.

(b) *Vesting Title*. – If the real or personal property is within the district, the court – instead of ordering a conveyance – may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.

3

(b) *Permissive Intervention.* –

(1) *In General.* – On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

[¶13] Irrespective of whether the applicant requests intervention of right or permissive intervention, the motion must be timely. Rule 24(a) & (b) (requiring a "timely motion" to intervene); *Hirshberg v. Coon,* 2012 WY 5, ¶ 14, 268 P.3d 258, 262 (Wyo. 2012) (citing Samuel Adams, Michael S. Greco, and Ryan M. Tosi, 2 *Bus. & Com. Litig. Fed. Cts.* § 18:56 (3d ed.)). Thus, regardless of the strength of the interest asserted by the applicant, a motion to intervene can be denied solely because it is untimely. *In the Int. of EHD,* 2017 WY 134, ¶ 14, 405 P.3d 222, 226 (Wyo. 2017) (citing *Masinter v. Markstein,* 2002 WY 64, ¶ 12, 45 P.3d 237, 242 (Wyo. 2002)). *See also, Platte Cnty. Sch. Dist. No. 1 v. Basin Elec. Power Co-op.,* 638 P.2d 1276, 1278 (Wyo. 1982) (the timeliness of an application to intervene is a threshold question).

[¶14] The district court has discretion in determining the timeliness of an application to intervene. *Hirshberg,* ¶ 13, 268 P.3d at 262; *Concerned Citizens of Spring Creek Ranch v. Tips Up, LLC,* 2008 WY 64, ¶ 11, 185 P.3d 34, 38 (Wyo. 2008). The court is "permitted to weigh the timeliness of an application to intervene in light of the circumstances of the particular case, including whether the applicant may have sought intervention earlier. Therefore, to prevail on an appeal from a finding that an application to intervene is untimely, an abuse of discretion must be demonstrated." *Hirshberg,* ¶ 9, 268 P.3d at 261 (quoting *Masinter,* ¶ 7, 45 P.3d at 240-41).

A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*Three Way, Inc. v. Burton Enterprises, Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008) (quoting *Doenz v. Sheridan Cnty. Bd. of Cnty. Comm'rs*, 949 P.2d 464, 465 (Wyo. 1997) (other citation and quotation marks omitted)). *See also, McBride-Kramer v. Kramer,* 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019).

[¶15]  In determining whether an application to intervene is timely, the court considers four factors:

> 1)  the length of time the applicant for intervention knew or reasonably should have known of its interest in the case before the application for leave to intervene was filed;
>
> 2)  the extent of the prejudice that the existing parties to the litigation may suffer as a result of the applicant's failure to seek intervention as soon as the applicant actually knew or reasonably should have known of its interest in the case;
>
> 3) the extent of the prejudice that the applicant for intervention may suffer if the application is denied; and
>
> 4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Hirshberg,* ¶ 15, 268 P.3d at 263 (quoting *State Farm Mut. Auto. Ins. Co. v. Colley,* 871 P.2d 191, 197 (Wyo. 1994) (quotation marks omitted)).  *See also, In the Int. of EHD,* ¶ 15, 405 P.3d at 226-27.[5]

[¶16]  The test for determining whether an intervention application is timely is "one of reasonableness—potential intervenors must be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Hirshberg,* ¶ 14, 268 P.3d at 262 (quoting S. Adams, M. Greco, and R. Tosi, 2 *Bus. & Com.*

---

[5] We referred to an additional list of factors in *Hirshberg,* ¶ 14, 268 P.3d at 262:

> Among the factors that courts normally consider in making this determination are the following: (1) the point to which the suit has progressed;  (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure to promptly intervene after it knew or reasonably should have known of its interest in the case; and (5) the existence of unusual circumstances mitigating against or in favor of intervention. . . .

> Samuel Adams, Michael S. Greco, and Ryan M. Tosi, 2 *Bus. & Com. Litig. Fed. Cts.* § 18:56 (3d ed.).

(emphasis omitted).  This list incorporates many of the same concepts as the *Hirshberg/Colley/EHD* list quoted above.  Furthermore, the factors are not exclusive.  A determination of whether an application to intervene is timely "requires consideration of all the relevant facts and circumstances involved in a given case[.]"  *Id.*

*Litig. Fed. Cts.* § 18:56 (3d ed.)). Furthermore, "the application for intervention must be made at a time when it is practical to allow another party to enter the dispute." *Platte Cnty. Sch. Dist. No. 1,* 638 P.2d at 1278 (citing *NAACP v. New York,* 413 U.S. 345, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973)) (other citation omitted). The timeliness requirement is "intended to prevent a tardy intervenor from derailing the lawsuit that is near completion." *Hirshberg,* ¶ 14, 268 P.3d at 262 (quoting S. Adams, M. Greco, and R. Tosi, 2 *Bus. & Com. Litig. Fed. Cts.* § 18:56 (3d ed.)). Thus, when an application to intervene is filed after a final judgment in a case, the applicant must show "a compelling basis to allow intervention at such a late stage in the proceedings and provide a strong justification for its failure to intervene earlier." *Id.,* ¶ 14, 268 P.3d at 262.

[¶17] After the hearing on Kathleen's motion to intervene, the district court made the following findings and conclusions:

> It is undisputed that Kathleen failed to seek intervention until after the final judgment was entered and over three (3) years after her husband [Scott] filed the *Complaint.* On its face, it appears Kathleen's attempt to intervene is at least motivated in part by [Scott] to derail the lawsuit that he initiated. . . . At the hearing on Kathleen's motions, it became clear to the court that Kathleen knew of the litigation from the start. Specifically, Kathleen testified she knew of this lawsuit when her husband filed the *Complaint* and had conversations about this lawsuit with her husband. She also testified she knew the appraisals were conducted. However, Kathleen claimed she did not know her interest in the partnership property would be affected or the existence of any judgment or order prior to June of 2019. Additionally, in response to why she never entered an appearance in this litigation, she stated she was under the impression that the ranch would be divided up and that she would be allowed to continue living on the ranch. Kathleen did not provide any facts or evidence to support this assumption.
>
> In contrast, [Scott], Kip, Carl, and Nadene – through counsel – appeared to understand Rebecca and Kathleen held a 9% interest in the partnership and that their interests were accounted for in the settlement agreement. In an email from [Scott's] former counsel, Jonathan Schnal, Mr. Schnal stated: "Scott's wife is willing to participate and join in any settlement, and will be represented by me." . . . At the [intervention] hearing, Mr. Schnal testified that he never spoke with Kathleen and did not represent her. Mr. Schnal also

6

testified the first time he communicated with Kathleen was after she filed her motions with the court. Although Mr. Schnal provided false information to Kip, Carl, and Nadene, all parties were under the impression that Kathleen's interest was taken into consideration. This understanding was evidenced by Kip purchasing [Scott's] 33% interest, instead of just 24%, pursuant to the July 2018 Order. [footnote: Kathleen testified she believed [Scott] represented her interests and that she trusts him to represent her interests]. This was further evidenced by [Scott] testifying that he believed he and Kathleen owned a 33% interest in the partnership. . . .

Kathleen's motion to intervene was filed after judgment was entered in July of 2018. Kathleen knew of the litigation when her husband filed suit over three (3) years ago. As such, if the court were to allow intervention, the original parties would be prejudiced because all parties agreed [Scott] would be the withdrawing partner in 2018, appraisals were conducted, and Kip tendered money to purchase [Scott's] interest in the property after the court's Order on Kip's Rule 70 motion. In addition, this case presents unusual circumstances against intervention because Kathleen's husband initiated the lawsuit, [she] sought to intervene only after judgment was entered, and [she] filed her motion to intervene after [Scott] was unsuccessful in opposing Kip's Rule 70 motion to enforce the judgment. Finally, because Kathleen filed her motion to intervene after judgment was entered, she was required to establish a compelling basis to allow for intervention and a strong justification for not intervening earlier. . . . The court finds Kathleen failed to show a compelling reason for her request to intervene or a strong justification for failing to intervene at an earlier date. Rather, Kathleen justified not intervening earlier because she trusted [Scott] to protect her interests.

[¶18]   Applying the four factors set out in *Hirshberg, Colley,* and *In the Int. of EHD, supra*, we agree with the district court's conclusions and find no abuse of discretion. The first factor is the length of time Kathleen knew or reasonably should have known of her interest in the case before she filed her motion to intervene. The district court found that Kathleen was aware of the complaint. Kathleen claims being aware of the lawsuit was insufficient to put her on notice that her interest was at stake in the matter or that she might have to leave her home on the ranch. She asserts her testimony at the hearing shows she did not know the case involved her interest until June 2019, apparently when it became clear she

7

would have to move off the ranch. Kathleen asserts the district court abused its discretion by unreasonably drawing conclusions which were "not based on the facts or rel[ying] on false information provided to the court."

[¶19] We have no way of evaluating Kathleen's or any other witness's testimony because the transcript of the hearing on her motion to intervene was not designated as part of the record on appeal. We, therefore, presume the district court's judgment was based upon competent and sufficient evidence. *See ENH v. Hansley,* 2016 WY 86, ¶ 10, 378 P.3d 296, 298 (Wyo. 2016); *Rammell v. Mountainaire Animal Clinic, P.C.,* 2019 WY 53, ¶ 18, 442 P.3d 41, 46 (Wyo. 2019).

[¶20] Furthermore, the record before us confirms Kathleen was or should have been aware her interest in the partnership was at stake in the case and she could be required to move out of her home well before she filed her motion to intervene. The complaint clearly stated Scott was seeking dissolution of the partnership. The record contains evidence showing Kathleen was aware she owned an interest in the partnership. K-1 forms dating back to 1993 show Kathleen's share of partnership income. She would have used those documents to prepare her taxes each year.

[¶21] It was also clear from the complaint that Scott was seeking dissolution in accordance with the partnership agreement. The agreement allowed for distribution of the partnership property among the partners if they could agree.[6] However, it also provided a means for buying out a withdrawing partner if the partners could not agree on how to divide the property.

[¶22] In July 2018, Scott, Kip, Carl, and Nadene agreed to settle their differences by invoking the buyout provision of the partnership agreement. The dissolution order stated the parties agreed Scott was the withdrawing partner. The order also stated Scott and Kip each owned a 33% interest in the partnership. The 33% interests would include their 24% interests and their wives' 9% interests. The order was part of the public record in this case. A potential intervenor is required to exercise reasonable diligence in learning about a suit that may affect his or her interest and acting to protect that interest in a reasonably prompt fashion. *Hirshberg,* ¶ 14, 268 P.3d at 262. It is reasonable to infer that Kathleen knew or reasonably should have known about the terms of the order. The order clearly indicated her interest was included with Scott's and that Scott was designated the withdrawing partner, meaning their interests in the partnership property, including the house they resided in, could be purchased by the continuing partner or partners.

---

[6] The complaint contained a cause of action for partition; however, partition of real property owned by a partnership is not a valid action. Property transferred into the partnership "is property of the partnership and not of the partners individually." Wyo. Stat. Ann. § 17-21-203 (LexisNexis 2019). Under the partition statutes, only "[t]enants in common and coparceners of any estate of lands, tenements or hereditaments within the state may be compelled to make a partition[.]" Wyo. Stat. Ann. § 1-32-101 (LexisNexis 2019).

8

[¶23] Much of Kathleen's argument on appeal is based upon facts showing the parties were aware of her separate interest in the partnership and intentionally disregarded it. What the parties knew is not the question. The question is what she knew or reasonably should have known and what actions she took to protect her interest. The evidence in the record shows Kathleen knew or reasonably should have known by at least the time of the July 2018 dissolution order that her partnership interest was at stake in the case and she may have to move off the partnership property. Yet, she did not file her motion to intervene until a year later, in July 2019.

[¶24] The second factor in determining the timeliness of Kathleen's motion to intervene is the extent of the prejudice Scott, Kip, Carl, and Nadene may suffer as a result of her failure to seek intervention as soon as she actually knew or reasonably should have known of her interest in the case. This case has been pending since 2015 and it had proceeded to final judgment prior to Kathleen filing her motion to intervene. Pursuant to the dissolution order, the property was appraised and Kip elected to purchase Scott and Kathleen's combined interest. In its Rule 70 order, the district court ordered that Scott be divested of the combined interest when Kip paid him, and Kip tendered payment. The district court properly found the existing parties would be prejudiced by allowing Kathleen to intervene at this late date.

[¶25] The third factor is the extent of prejudice Kathleen may suffer if her application to intervene is denied. Although the district court did not expressly consider this factor, it appears Kathleen could be prejudiced by a denial of her application to intervene. She sought intervention to protect her interest in the partnership. There is no question that this case should have proceeded with all partners, including Kathleen and Rebecca (or her estate), named as parties. However, the fact Kathleen knew about the lawsuit and felt her interest was protected by Scott mitigates the prejudice suffered by Kathleen by being denied intervention.

[¶26] The final factor is the existence of unusual circumstances militating either for or against a determination that the application was timely. The district court found this case presented unusual circumstances militating against intervention. We agree. Scott filed this lawsuit, Kathleen was aware of it, and Kathleen felt Scott was adequately protecting her interest until she learned she had to move off the ranch property. Her late motion to intervene seems to be another attempt by Scott to undermine the dissolution procedure. The policy behind requiring a motion to intervene to be filed in a timely manner is to "prevent a tardy intervenor from derailing [a] lawsuit that is near completion." *Hirshberg,* ¶ 14, 268 P.3d 262 (quoting S. Adams, M. Greco, and R. Tosi, 2 *Bus. & Com. Litig. Fed. Cts.* § 18:56 (3d ed.)).

[¶27] The first, second and fourth factors weigh strongly in favor of denying Kathleen's motion to intervene. The third factor weighs slightly in favor of allowing Kathleen to

intervene in the action to protect her partnership interest. Since a final judgment had been entered prior to Kathleen filing her application to intervene, she was required to show a "compelling basis to allow intervention at such a late stage in the proceedings and provide a strong justification for [her] failure to intervene earlier." *Hirshberg*, ¶ 14, 268 P.3d at 262. Considering the totality of the circumstances, Kathleen has failed to establish either. It appears her intervention request was an effort to derail the case when it did not go the way she and Scott desired. Under the circumstances presented here, the district court reasonably concluded Kathleen's motion to intervene was untimely. It did not abuse its discretion by denying Kathleen's motion to intervene.

[¶28] Affirmed.